IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KEVIN POPPEN,                                          Case No. 3:22-cv-00227-SB

              Plaintiff,                           **OPINION AND ORDER**

      v.

CLACKAMAS COUNTY,

              Defendant.

**BECKERMAN, U.S. Magistrate Judge.**

      This matter comes before the Court as a mixed jury and bench trial, held from October 17, 2023, to October 20, 2023. The jury returned a verdict for Defendant Clackamas County ("County") on Plaintiff Kevin Poppen's ("Poppen") claims for violations of the Family Medical Leave Act ("FMLA"), Americans with Disabilities Act, and Age Discrimination in Employment Act, and his claims for disability and age discrimination under Oregon law. (Jury Verdict at 1-2, ECF No. 108.) Poppen's remaining claim under the Oregon Family Leave Act ("OFLA"), is the subject of the bench trial. (Compl. at 9, ECF No. 1.)

      After reviewing the testimony and evidence presented at trial, the Court makes the following findings of fact and conclusions of law, pursuant to Federal Rule of Civil Procedure

PAGE 1 – OPINION AND ORDER

("Rule") 52(a). *See Schultz v. NW Permanente P.C.*, No. 3:20-cv-00626-IM, 2022 WL 2072602 (D. Or. June 9, 2022) (taking the same approach when evaluating the plaintiff's OFLA claim following a jury trial resolving the plaintiff's FMLA claim), *appeal dismissed*, No. 22-35551, 2022 WL 11128692 (9th Cir. Oct. 13, 2022). The Court finds that Poppen's use of leave was not a negative factor in the County's decision to demote him. Accordingly, the Court finds in the County's favor on Poppen's OFLA claim.

## FINDINGS OF FACT

1.      There are several hierarchical tiers of employment at the Clackamas County Sheriff's Office ("CCSO"). As relevant here, the position of Lieutenant reports to the position of Captain, the position of Captain reports to the position of Undersheriff (also called Chief Deputy), and the position of Undersheriff reports to the Sheriff. (Kevin Poppen Testimony, Oct. 18, 2023; Angela Brandenburg Testimony, Oct. 20, 2023.)

2.      The position of Captain is an at-will position pursuant to Clackamas County Code 2.02.040.4. (Def. Ex. 201.) Captains can be removed for reasons unrelated to discipline at the will and pleasure of the Sheriff. (*Id.*)

3.      In 1982, Poppen first became a permanent employee at the CCSO. (Kevin Poppen Testimony, Oct. 18, 2023.)

4.      In 2001 and again in 2007, Poppen was promoted from the position of Lieutenant to the position of Captain. (Angela Brandenburg Testimony, Oct. 17, 2023; Craig Roberts Testimony, Oct. 18, 2023; Kevin Poppen Testimony, Oct. 18, 2023.)

5.      Throughout his career, Poppen received numerous awards and commendations from various persons at the CCSO and other sources. (Kevin Poppen Testimony, Oct. 18, 2023; Pl. Exs. 1-2.) He never received a disciplinary report or a negative performance evaluation. (Kevin Poppen Testimony, Oct. 18, 2023; Pl. Exs. 4-6, 8; Angela Brandenburg Testimony, Oct.

17, 2023.) He has experience supervising almost every division within the CCSO and was well liked. (Angela Brandenburg Testimony, Oct. 17, 2023; Kevin Poppen Testimony, Oct. 18, 2023; Lyndie Hamlin Testimony, Oct. 18, 2023; Craig Roberts Testimony, Oct. 18, 2023; Lee Eby Testimony, Oct. 19, 2023.)

6.      In 2020, former Sheriff Craig Roberts decided to retire at the end of the year. (Kevin Poppen Testimony, Oct. 19, 2023.)

7.      For a short period of time, Poppen entered his name into the running for Sheriff, but he withdrew as a candidate before the primary election. (Kevin Poppen Testimony, Oct. 18, 2023.)

8.      In May 2020, Angela Brandenburg ("Brandenburg")[1] won the primary election for the position of Sheriff. (Angela Brandenburg Testimony, Oct. 20, 2023.)

9.      Over time, Poppen had begun suffering from osteoarthritis and had developed hip pain and a resulting limp when he walked. (Kevin Poppen Testimony, Oct. 18, 2023; Cathy Poppen Testimony, Oct. 18, 2023.) As relevant here, in September 2020, Poppen requested medical leave for hip surgery. (Pl. Exs. 25-26.) Brandenburg, his supervisor at the time, approved the leave. (Angela Brandenburg Testimony, Oct. 17, 2023; Kevin Poppen Testimony, Oct. 18, 2023.)

10.     Poppen took medical leave starting on September 22, 2020, for approximately three weeks. (Kevin Poppen Testimony, Oct. 18, 2023.)

11.     After the surgery and three weeks of leave, Poppen continued to use intermittent medical leave. (*Id.*) Poppen's doctor released him to work five hours per day for four days each week. (*Id.*) Poppen anticipated returning to work full-time in January 2021. (*Id.*)

---

[1] At the time of trial, Brandenburg was still serving as Sheriff, but the Court refers to her without her honorific herein because she had different titles throughout the relevant time period.

12.    In November 2020, Brandenburg won the general election for the position of Sheriff. (Angela Brandenburg Testimony, Oct. 17, 2023; Angela Brandenburg Testimony, Oct. 20, 2023.)

13.    In late November 2020, Brandenburg identified which staff would serve as Undersheriffs when she took office in January 2021. (Angela Brandenburg Testimony, Oct. 17, 2023; Kevin Poppen Testimony, Oct. 18, 2023; Pl. Ex. 34.) There was movement within the agency, with the creation of an additional Undersheriff position and certain staff members being promoted to the position of Undersheriff. (Kevin Poppen Testimony, Oct. 18, 2023; Angela Brandenburg Testimony, Oct. 20, 2023.)

14.    On November 24, 2020, Brandenburg came to Poppen's office. (Kevin Poppen Testimony, Oct. 18, 2023; Angela Brandenburg Testimony, Oct. 17, 2023.) In a brief conversation, she told Poppen that he would no longer serve as a Captain when she took office but would instead hold the position of Lieutenant. (Kevin Poppen Testimony, Oct. 18, 2023.)

15.    Poppen asked what his new assignment would be. (*Id.*) Sheriff Brandenburg said that she would try to let him know by mid-December. (*Id.*)

16.    Around the same time, Brandenburg chose to move one other Captain, Jeff Smith, to the position of Lieutenant effective January 2021. (Angela Brandenburg Testimony, Oct. 20, 2023.)

17.    The previous Sheriff, Craig Roberts, had similarly made staff adjustments during his time as Sheriff. (James Rhodes Testimony, Oct. 18, 2023.) For example, he had promoted James Rhodes to the Chief Deputy position and then had subsequently demoted Rhodes to the position of Captain without providing a reason. (*Id.*)

///

PAGE 4 – OPINION AND ORDER

18.     On December 16, 2020, one of the staff members who Sheriff Brandenburg had selected to be an Undersheriff when she took office—Lieutenant Jesse Ashby—notified Poppen that Poppen's new assignment would be to serve as an Administrative Lieutenant. (Kevin Poppen Testimony, Oct. 18, 2023.) Poppen was not aware of anyone within the agency holding an Administrative Lieutenant position in the past. (*Id.*) Poppen asked what duties the position would entail, and Ashby said that he did not know but that it may involve case management duties. (*Id.*) Poppen considered the position to be an undesirable job because he suspected that it would largely entail reviewing reports, which is generally the job of a Sergeant, a lower-level employee. (*Id.*)

19.     Brandenburg subsequently announced to the entire CCSO the staff assignments for when she took office in January 2021, including the fact that Poppen would no longer be a Captain. (Pl. Ex. 37; Angela Brandenburg Testimony, Oct. 17, 2023.)

20.     The demotion from the position of Captain to Lieutenant would include a reduction in pay. (Kevin Poppen Testimony, Oct. 18, 2023.) Poppen received advice that the change would also influence his Public Employees Retirement System benefits upon retirement. (*Id.*)

21.     After finding out what his new title would be—Administrative Lieutenant— Poppen decided to retire. (*Id.*)

22.     Poppen retired on December 31, 2020, before his new assignment was set to take effect. (*Id.*; Pl. Ex. 43.)

23.     On February 14, 2022, Poppen filed this action against the County. (*See generally*, Compl., ECF No. 1.) Among other claims, Poppen asserted that the County violated

///

OFLA by interfering with, discriminating against, and retaliating against Poppen for taking medical leave by deciding to demote him. (*Id.* at 9.)

## CONCLUSIONS OF LAW

1.      The Court has jurisdiction under 28 U.S.C. § 1367, and all parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636. (ECF Nos. 7, 9.)

2.      Under OFLA, "[i]t is an unlawful practice for a covered employer to . . . [r]etaliate or in any way discriminate against an individual with respect to . . . any . . . term or condition of employment because the individual has . . . submitted a request for family leave or invoked any provision of [OFLA]." OR. REV. STAT. § 659A.183. OFLA "shall be construed to the extent possible in a manner that is consistent with any similar provisions of the federal [FMLA]." *Id.* § 659A.186(2). To establish an OFLA claim, "a plaintiff must show by a preponderance of the evidence that [the plaintiff's] use of OFLA-protected leave was a negative factor in defendant's adverse employment decision." *Schultz*, 2022 WL 2072602, at *3 (simplified); *see also Bacon v. Dep't of Hum. Servs.*, No. 22-35142, 2023 WL 2755592, at *1 (9th Cir. Apr. 3, 2023) (so stating).

3.      The parties agree that Poppen used protected medical leave. (Pl.'s Trial Mem. at 6-7, ECF No. 35; Def.'s Trial Mem. at 4, ECF No. 46.) The parties also agree that the County decided to demote him. (Pl.'s Trial Mem. at 8; Def.'s Trial Mem. at 4.) The parties disagree as to whether Poppen's use of medical leave was a negative factor in that decision.

4.      The Court concludes that Poppen has failed to meet his burden of proving that his medical leave was a negative factor in the County's decision to demote him. *See Schultz*, 2022 WL 2072602, at *6 (concluding that the plaintiff had not proved that the defendant considered the plaintiff's use of OFLA leave as a negative factor in the defendant's adverse employment decision); *see also Denny v. Union Pac. R. Co.*, 173 F. App'x 549, 550 (9th Cir. 2006) (affirming

the district court's finding that the plaintiff's request for medical leave was not a negative factor and the district court's finding that the defendant had instead decided to terminate the plaintiff because of a heated exchange during which the plaintiff swore at his supervisor).

5.      Brandenburg signed off on all of the medical leave Poppen requested without comment or complaint. (Angela Brandenburg Testimony, Oct. 17, 2023; Kevin Poppen Testimony, Oct. 18, 2023.) The pair never talked about his leave, and there is no evidence that Brandenburg was frustrated by Poppen's use of leave or in any other manner looked down upon his use of leave. (Kevin Poppen Testimony, Oct. 19, 2023.) Poppen testified that nobody pressured him to come back early from his leave and that he received all of the leave he requested. (*Id.*) None of the witnesses testified that Brandenburg mentioned Poppen's use of leave to them as part of her decision-making process. (*See, e.g.*, Eric Sarha Testimony, Oct. 19, 2023.) In other words, there was no evidence presented at trial suggesting that Brandenburg negatively viewed Poppen's use of medical leave or considered it in her decision not to select him as a member of her leadership team.

6.      Instead, the evidence reveals that Brandenburg did not select Poppen to be a Captain because Brandenburg had a different vision for the type of leaders she placed on her leadership team. (*Id.*; Angela Brandenburg Testimony, Oct. 20, 2023.) Over their careers, Brandenburg and Poppen had worked together. (Kevin Poppen Testimony, Oct. 18, 2023; Angela Brandenburg Testimony, Oct. 20, 2023.) Brandenburg considered Poppen to be more quiet and not as confident nor as decisive of a leader compared to others in the office. (Angela Brandenburg Testimony, Oct. 17, 2023; Angela Brandenburg Testimony, Oct. 20, 2023.) Before making her staffing decisions, Brandenburg consulted with a representative from the Human Resources department—Eric Sarha—who advised her that she could select her leadership team,

Case 3:22-cv-00227-SB    Document 113    Filed 11/21/23    Page 8 of 8

including demoting Captains, pursuant to the Clackamas County Code. (Eric Sarha Testimony, Oct. 19, 2023.) Accordingly, Brandenburg selected her leadership team and demoted Poppen and one other Captain, Jeff Smith, to the position of Lieutenant. (Angela Brandenburg Testimony, Oct. 20, 2023.) Brandenburg credibly testified that, from her perspective, the individuals whom she selected for her leadership team had the type of leadership skills for which she was looking and Poppen did not. (Angela Brandenburg Testimony, Oct. 20, 2023.)

7.    Accordingly, the Court finds that Poppen's use of medical leave was not a negative factor in the County's decision to demote him. (*See also* Jury Verdict at 1, ECF No. 108, concluding the same with respect to Poppen's FMLA claim.)

## CONCLUSION

For the reasons stated, the Court finds in favor of the County on Poppen's OFLA claim (Claim Two).

**IT IS SO ORDERED.**

DATED this 21st day of November, 2023.

HON. STACIE F. BECKERMAN
United States Magistrate Judge